# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| CARPENTERS SOUTHWEST ADMINISTRATIVE CORP. et al., | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) |
| THOMAS & ASSOCIATES MANUFACTURING et al., | ) ) ) |
| Defendants. | ) ) ) |

Case No.: 2:09-cv-02202-GMN-PAL

**ORDER**

This case arises out of the failure of a property owner to satisfy allegedly delinquent contributions owed to certain union trust funds by the property owners' general contractor and a subcontractor. Plaintiffs have sued not only the delinquent contractor and subcontractor, but also the property owners, arguing that Nevada law makes the property owner itself liable for the delinquent amount. Pending before the Court is the property owner's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (#9). For the reasons given herein, the Court grants the motion to dismiss.

## I.    FACTS AND PROCEDURAL HISTORY

Defendant Fiesta Palms, LLC owns the Palms Casino Resort in Las Vegas, Nevada. Palms Place, LLC is a condominium hotel and spa on the property. Fiesta Palms entered into a contract with Defendant Thomas & Associates Manufacturing ("Thomas") for millwork at Palms Place, and Thomas subcontracted with Defendant Mercury Installation Services, Inc.

("Mercury").  Plaintiffs allege that Thomas and Mercury failed to make required payments to certain trust funds.

Plaintiffs sued Thomas, John Roy Thomas, Mercury, and Fiesta Palms and Palms Place (collectively, "Palms") in this Court on five causes of action, only the fifth of which is pled against Palms: "Damages for Failure to Pay Fringe Benefit Contributions Pursuant to Nevada Revised Statute § 608.150."  Palms has moved to dismiss, or in the alternative, for summary judgment.

## II.    LEGAL STANDARDS

### A.    Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In considering whether the complaint is sufficient to state a claim, a court takes all material allegations as true and construes them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).  The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion . . . .  However, material which is properly submitted as part of the

complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted).  Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment.  *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).  Under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986).  Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

If the court grants a motion to dismiss, it must then decide whether to grant leave to amend.  The court should "freely give" leave to amend when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant . . . undue prejudice to the opposing party by virtue of . . . the amendment, [or] futility of the amendment . . . ." Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

## B.      Rule 56(c)

The Federal Rules of Civil Procedure provide for summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  A principal purpose of summary

judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court uses a burden-shifting scheme:

When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case.

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions

and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

III.    **ANALYSIS**

In Nevada, a general contractor is liable for its subcontractors' nonpayment of "indebtedness for labor":

> Every original contractor making or taking any contract in this State for the erection, construction, alteration or repair of any building or structure, or other work, shall assume and is liable for the indebtedness for labor incurred by any subcontractor or any contractors acting under, by or for the original contractor in performing any labor, construction or other work included in the subject of the original contract, for labor, and for the requirements imposed by chapters 616A to 617, inclusive, of NRS.

Nev. Rev. Stat. § 608.150(1).  "[E]mployee benefit trust contributions constitute 'indebtedness for labor,' and [] trustees of employee benefit trusts have standing to sue under NRS 608.150 as representatives of the employees." *Hartford Fire Ins. Co. v. Trs. of Constr. Indus.*, 208 P.3d 884, 894 (Nev. 2009) (citations omitted).  The parties dispute whether Palms is a "contractor" to which this statutory liability extends.  Chapter 608 does not define "contractor."  However, Chapter 624, entitled "Contractors," does so in detail:

1. "Contractor" is synonymous with 'builder.'

2.   A contractor is any person, except a registered architect or a licensed professional engineer, acting solely in his professional capacity, who in any capacity other than as the employee of another with wages as the sole compensation, undertakes to, offers to undertake to, purports to have the capacity to undertake to, or submits a bid to, or does himself or by or through others, construct, alter, repair, add to, subtract from, improve, move, wreck or demolish any building, highway, road, railroad, excavation or other structure, project,

development or improvement, or to do any part thereof, including the erection of scaffolding or other structures or works in connection therewith. Evidence of the securing of any permit from a governmental agency or the employment of any person on a construction project must be accepted by the Board or any court of this State as prima facie evidence that the person securing that permit or employing any person on a construction project is acting in the capacity of a contractor pursuant to the provisions of this chapter.

3.  A contractor includes a subcontractor or specialty contractor, but does not include anyone who merely furnishes materials or supplies without fabricating them into, or consuming them in the performance of, the work of a contractor.

4.  A contractor includes a construction manager who performs management and counseling services on a construction project for a professional fee.

5.  A contractor does not include an owner of a planned unit development who enters into one or more oral or written agreements with one or more general building contractors or general engineering contractors to construct a work of improvement in the planned unit development if the general building contractors or general engineering contractors are licensed pursuant to this chapter and contract with the owner of the planned unit development to construct the entire work of improvement.

§ 624.020(1)–(5).

There is no case holding that a property owner is automatically liable as a "contractor" under this statute.  However, a property owner has been denied summary judgment in this district on the question of whether it qualified as a "contractor" under another statute, where there was evidence the property owner had paid a subcontractor directly, had applied for the building permit itself, and maintained financial responsibility and control over the project. *See MGM Grand Hotel, Inc. v. Imperial Glass Co.*, 65 F.R.D. 624, 633–34 (D. Nev. 1974) (Foley, C.J.), *rev'd on other grounds*, 533 F.2d 486 (9th Cir. 1976).  In that case, MGM Grand sued Imperial Glass for damages resulting from Imperial's allegedly poor workmanship in installing glass during construction of the MGM Grand casino.  Imperial put forth several defenses, one of which was that MGM Grand was barred by § 624.320 from suing in the capacity of a contractor unless it was duly licensed as one. *Id.* at 628–29.  MGM Grand admitted it had no license, but denied it was acting as a contractor. *Id.* at 629.  After a choice-of-law analysis in favor of Nevada

law, the court analyzed whether MGM Grand was (1) a typical property owner who had hired a general contractor, in which case MGM Grand would not be a "contractor" under the statutes, or (2) a property owner who was also acting as a general contractor, in which case it could be a "contractor":

> In order to determine if plaintiff was acting as a contractor within the scope of NRS Chapter 624 it is necessary to examine certain of the contractual agreements plaintiff entered into in order to facilitate the construction of its $100,000,000. hotel and casino complex.  Normally, when an owner desires to construct a facility such as plaintiff's hotel he will hire a general contractor who will in turn contract with various subcontractors.  The general contractor normally takes all financial responsibility for the entire project.  Even though the owner is the one ultimately paying all costs, the general contractor is the one looked to by the materialmen, suppliers, sub contractors, etc., for payment.  Plaintiff in the instant case elected not to follow this established procedure in the construction of its hotel.  Instead, plaintiff chose to utilize what is commonly referred to as the managing contractor concept.  Pursuant to this plan plaintiff hired cross defendant Taylor Construction Company to be the managing contractor of the project.  A copy of the agreement between plaintiff and Taylor has been made a part of the record in the instant case, as has a copy of the agreement between plaintiff and defendant Imperial.
>
> An examination of the MGM/Taylor contract discloses the following information: (1) Taylor was employed by plaintiff, ". . . in a consulting and supervisory capacity to supervise and administer the construction of the project." *See* MGM/Taylor contract, p. 1. (2) Taylor was to be paid a flat fee for these services. *Id.* § 2.01. (3) All sub contracts, etc., were to be made on plaintiff's behalf and plaintiff, but not Taylor, would be responsible for payment thereof. *Id.* § 2.03. (4) The agreement created no contractual obligations between Taylor and the various sub contractors unless Taylor specifically assumed the obligation in writing. *Id.* § 15.02.
>
> Likewise, an examination of the MGM/Imperial contract sheds some light on plaintiff's role in the construction of its hotel.  The following information is disclosed: (1) Even though Taylor's name appears on the contract it is clear that Taylor entered into the contract for the benefit of plaintiff. *See* MGM/Imperial contract p. 1. *See also* p. 32 where the contract was signed by Taylor as plaintiff's representative, and also by plaintiff's chairman of the board. (2) Plaintiff agreed to pay Imperial for its services on the project. *Id.* § 1.02. (3) Even though Taylor had the authority to supervise Imperial's work, plaintiff maintained the ultimate control. *Id.* §§ 5.04, 5.08, 8.01, 10.01, 10.02, 13.01.4. (4) The agreement created no contractual relationship between Taylor and Imperial.  In addition, plaintiff, and not Taylor, was financially liable to Imperial. *Id.* § 16.02.

. . . .

In addition to the fact that plaintiff employed Taylor and various sub-contractors on the construction project, defendants' exhibit 3 attached to their motion for summary judgment reveals that plaintiff's chairman of the board signed an application for a Clark County, Nevada, building permit for one phase of the construction of plaintiff's hotel.  In addition, § 9.03 of the MGM/Imperial contract provided that plaintiff was to secure the general building permit for the project.  Thus, the answer to the Court's first question is clear.  Under Nevada law plaintiff was acting as a contractor in the construction of its hotel.

*Id.* at 633–34.  In summary, the court noted that a property owner hiring a general contractor is not itself a "contractor" under the statutes simply because it is ultimately paying the costs, but reasoned that a property owner could be a "contractor" where there is evidence that the property owner has taken on the management responsibilities normally performed by a general contractor, such as the direct hiring and payment of subcontractors, the use of the ostensible general contractor as a mere consultant and agent, the lack of any contractual obligations between the ostensible general contractor and the subcontractors, and the application for a building permit in the property owner's name.  Under such circumstances, a property owner is a contractor under the statute.

The Nevada Supreme Court has addressed § 624.020 in six cases, but only one such case is helpful in the present context.  In *Trident Constr. Corp. v. W. Elec., Inc.*, 776 P.2d 1239 (Nev. 1989), the Court affirmed that Trident was the general contractor under § 624.020, not the property owner of the Polynesian Hotel and Casino where the work was performed, because Trident had contracted with the subcontractor for the work, obtained the building permits, and paid the subcontractor itself. *Id.* at 1241–42.

Accordingly, Palms is not a "contractor" under § 624.020 in this case.  There is no allegation in the Complaint that Palms applied for any building permits, contracted directly with Mercury or any other subcontractor, paid Mercury or any other subcontractor, managed the construction at issue, or merely used Thomas in a consulting role.  The Complaint calls Thomas

the "EMPLOYER," (see Compl. ¶ 12), and alleges a typical owner–general contractor relationship, (*see id.* ¶ 21 ("EMPLOYER performed a work of construction for PALMS, upon property owned by PALMS in Las Vegas, Nevada."); *id.* ¶ 65).  In fact, Plaintiffs affirmatively allege that Thomas, not Palms, entered into a subcontract with Mercury. (*See id.* ¶ 66).  Taking the allegations in the Complaint to be true, the circumstances in this case indicate an ordinary owner–general contractor relationship, as in *Trident*, not the unorthodox situation in *MGM Grand* where the owner itself acted as the general contractor.  Therefore, Palms' liability to Plaintiffs under Chapter 608 is legally implausible.

## CONCLUSION

IT IS HEREBY ORDERED THAT the Motion to Dismiss (#9) is GRANTED.


DATED:  This 12th day of July, 2010.

Gloria M. Navarro
United States District Judge